**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| RANDY VELLEFF, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 10 C 411 |
| | ) | |
| UNITED STATES OF AMERICA, | ) | Judge Joan H. Lefkow |
| | ) | |
| Respondent. | ) | |

**OPINION AND ORDER**

Following a jury trial before this court in July 2003, petitioner Randy Velleff was found guilty of a conspiracy and attempt to rob a drug stash house and to possess cocaine with the intent to distribute. The jury found by special verdict that Velleff conspired and attempted to possess five kilograms or more of cocaine. Velleff was also convicted of possessing a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A). He is currently serving a 300-month sentence. Velleff now seeks to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255, arguing that he was denied the effective assistance of trial and appellate counsel in violation of the Sixth Amendment. For the reasons stated below, Velleff's petition is denied.

**BACKGROUND**

**I.      Factual Background**

Velleff got caught in a sting operation set up by the Bureau of Alcohol, Tobacco, Firearms and Explosives (the "ATF"), in which he agreed to rob a drug stash house of between six to eleven kilograms of cocaine and $50,000 to $60,000. Velleff was initially approached on March 7, 2002 by a confidential informant about the job and indicated his willingness to participate. On March 28, 2002, he met with the informant and an undercover ATF agent, Mark Shaffer, who posed as a drug dealer, at a bar in Elmwood Park, Illinois to further discuss the robbery. Shaffer claimed to need help robbing cocaine and currency from his Mexican drug

supplier. He explained that his partner, ATF agent Frank Jury, would place an order for cocaine and then be informed of the location from which to get it. The plan proposed was for Shaffer and Velleff to follow Jury to the stash house, allow Jury to enter to buy the drugs, and then proceed to enter themselves and commit the robbery. Velleff and Shaffer agreed to split the proceeds from the robbery, namely money and cocaine, fifty-fifty. During this meeting, Velleff indicated that he had no problem using violence and that Patrick Deering, his co-defendant, would participate in the robbery as well.

After several phone conversations and cancelled meetings, Velleff, Deering, Shaffer, and Jury met on April 17, 2002 in the Montrose Harbor parking lot to discuss in greater detail the planned robbery. They discussed their entry into the stash house, the number of people who could be present, and the fact that the occupants of the stash house would be armed. Jury informed Velleff and Deering that the stash house was guarded at all times by Manuel, an enforcer who sat on a sofa with a gun always in reach. Velleff reaffirmed that he was committed to the robbery and that he was willing to use force if need be. On April 24, 2002, the day of the planned robbery, Velleff, Deering, and Shaffer met in a Menard's parking lot in Dolton, Illinois. Velleff and Deering arrived in Deering's minivan. Deering showed Shaffer the items they had brought with them to execute the robbery, which included a .357 caliber revolver, ammunition, a bulletproof vest, a surgical knife, a ski mask, rubber gloves, black gloves, and a Gerber knife. Although there was only one gun, Velleff stated that he was going to enter the stash house and take the enforcer's shotgun. Shaffer also told Velleff and Deering that Jury would have a shotgun. Shaffer provided Velleff and Deering with the opportunity to back out of the robbery, but both indicated their desire to proceed. Deering and Velleff then followed Shaffer to a warehouse purportedly owned by Jury from which they were going to follow Jury to the stash house. When they arrived, Shaffer got out of his car and told Deering and Velleff to wait. When he returned and let them know all was clear, they exited the minivan without their gear and were arrested by ATF agents. The minivan was subsequently searched and the tools they had brought

with them recovered. Velleff and Deering were placed in the back of a police car. Their subsequent conversation was recorded, in which they discussed being set up.

## II. Pre-Trial Proceedings

Velleff and Deering were indicted on July 18, 2002. Velleff was charged in five counts of the indictment with conspiracy to commit robbery affecting interstate commerce, in violation of the Hobbs Act, 18 U.S.C. § 1951 (Count I); conspiracy to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count II); possessing and carrying a firearm in relation to a crime of violence as charged in Count I, in violation of 18 U.S.C. § 924(c) (Count III); attempted robbery affecting interstate commerce, in violation of 18 U.S.C. § 1951 (Count IV); and attempted possession with intent to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846 (Count V). His initial court-appointed attorney, Thomas Leinenweber, moved to withdraw in January 2003, representing that he had "been notified by the Government of certain things that if true would irreparably destroy the relationship between the Defendant and the undersigned counsel." Crim. R. 39.[1] The government had apparently informed Leinenweber of a telephone conversation between Velleff and his then-girlfriend after a bond hearing before the court in which Velleff stated that he would kill Leinenweber if he screwed up. Civ. R. 9-1 at GA 39. Imani Chiphe, of the Federal Defender's Office, was then appointed counsel for Velleff and represented him, with the aid of co-counsel, Heather Winslow, through trial.

On February 3, 2003, prior to Velleff's trial, his co-defendant, Deering, pleaded guilty to Counts I and II of the indictment pursuant to a plea agreement. During the change of plea hearing, Deering admitted that he and Velleff planned to rob the drug stash house and that he brought the .357 revolver, ammunition, a bulletproof vest, surgical steel knives, brass knuckles, and a Gerber knife, among other things, to be used in the robbery. Previously, on November 26,

---

[1] Documents from Velleff's criminal case will be referred to as "Cr. R. [docket number]." Documents filed in Velleff's § 2255 case will be referred to as "Civ. R. [docket number]."

2002, Deering, with his attorney present, had participated in a proffer session with ATF agents Jeffrey Sisto and Dan Durkin. Deering provided a proffer statement, in which he claimed that Velleff approached him with an opportunity to rob a drug stash house but stated that they did not have to rob the house as they would just rob the individuals, later revealed as ATF agents, of the money they were planning to use to buy the drugs. Deering also stated that Velleff wanted to concoct a story that would make the ATF agents comfortable with their participation in the robbery, that Velleff and Deering agreed to wait to see the money the ATF agents had on them the day of the robbery to determine whether they would act or not, and that, upon seeing the money, Deering planned to go to his car, get his gun, and then rob the ATF agents with Velleff's help.

### III.    Trial

Velleff proceeded to trial in July 2003. At trial, the government presented the tape recorded conversations that took place among Velleff, Deering, Shaffer, Jury, and the confidential informant leading up to the planned robbery. It also presented expert testimony from a Drug Enforcement Administration task force agent, Robert Coleman, regarding the fact that cocaine is manufactured in South America and enters Illinois by crossing both state and national borders. He also testified that a robbery such as the one Velleff intended to participate in would deplete drug dealers' supply, requiring them to obtain more cocaine from South America to replace it.

Velleff's defense at trial was that he and Deering did not conspire to rob the drug stash house but instead to rob the ATF agents with whom they were purportedly cooperating in the robbery. Shaffer testified on cross-examination that he was not sure whether Velleff and Deering planned to double-cross him and Jury by stealing his bait money. The parties stipulated to a summary of Deering's proffer statement, for impeachment purposes only, and of the discussion at Deering's change of plea hearing in which he admitted to the underlying facts of the government's case.

4

In its closing argument, the government summarized the evidence against Velleff, emphasizing his willingness and intention to participate in the robbery, in addition to his initiative in developing the plan for its execution. It argued that Velleff's theory of the case, that he and Deering intended to rob Shaffer and Jury and not the stash house, was not supported by any record evidence. While acknowledging Deering's proffer statement, the government emphasized that it was not given under oath and that Deering disavowed it several months later during his change of plea hearing, in which he admitted under oath to the facts as presented by the government. The government also argued that it was implausible that Velleff and Deering would have intended to rob Shaffer and Jury, particularly as there was no evidence of their having done surveillance of the warehouse area, they did not know where Jury would have the money, and they were known to Shaffer and Jury, making getting away with such a plan rather risky. In response, counsel for Velleff argued that there was no agreement to rob the stash house but instead only an agreement to rob Shaffer and Jury. Counsel emphasized Shaffer's testimony that sometimes targets turn on the undercover agents and that Shaffer did not know whether Velleff and Deering planned to turn on him during the robbery. He also highlighted Deering's proffer statement and the fact that proffer statements, while not under oath, are still required to be truthful. In rebuttal, the government suggested that had the plan actually been to rob Shaffer and Jury, that plan would have been discussed during the recorded conversation that took place between Velleff and Deering after their arrest. The government further suggested that Deering lied during the proffer session to help himself and Velleff, stating that "Deering's so-called statement to the agents where he lied has about as [m]uch substance as a broth made from the shadow of a dead pigeon." Trial Tr. 529:13–15, July 10, 2003. Defense counsel objected to the remark as inflammatory and improper, and the objection was sustained.

After deliberation, the jury found Velleff guilty on all counts and concluded that he conspired and attempted to possess five kilograms or more of cocaine.

5

**III.    Post-Trial Proceedings**

Velleff filed a motion for judgment of acquittal on the drug and robbery counts, arguing that the government did not prove that he knowingly conspired or took a substantial step toward committing the charged crimes, as Shaffer testified at trial that he did not know whether Velleff planned to rob the stash house or him and Deering admitted in his proffer statement that Velleff planned to rob the ATF agents.  The motion also challenged Velleff's conviction on the basis that there was insufficient evidence that the conduct charged affected and had a nexus to interstate commerce, as required under the Hobbs Act.[2]  The court denied Velleff's motion.  Soon thereafter, Chiphe was granted leave to withdraw as Velleff's attorney and Donna Hickstein-Foley was appointed to replace him.

At sentencing, Velleff faced a mandatory minimum of 10 years and a maximum of life on the drug counts, a maximum of 20 years on the robbery counts, and a statutory term of at least 60 months on the § 924(c) count to run consecutively to any other imposed term.  On April 5, 2004, the court sentenced Velleff to a total term of imprisonment of 430 months, 370 months on the drug counts to run concurrently with 240 months on the robbery counts in addition to a 60 month consecutive sentence on the § 924(c) count.  Hickstein-Foley filed an appeal on Velleff's behalf challenging sentencing issues only.  Velleff filed a *pro se* motion for a temporary stay of the appeal and to withdraw counsel's brief, arguing that Hickstein-Foley was not providing him with effective assistance as she failed to raise issues from trial on appeal.  The Seventh Circuit denied these motions and proceeded to consider the merits of Velleff's appeal.  A limited remand was ordered to allow this court to determine whether it would reimpose the same sentence in light of *United States* v. *Booker*, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).  *See United States* v. *Paladino*, 401 F.3d 471, 484 (7th Cir. 2005).  This court indicated its intention to do so, leading the Seventh Circuit to vacate Velleff's sentence and remand the case for imposition of a new sentence.

---

[2] These arguments had also been raised during Velleff's trial.

During the resentencing phase, Velleff was again represented by new counsel, although he represented himself *pro se* for a portion of this time with appointed counsel acting as standby counsel. While represented by counsel, Velleff filed a *pro se* motion to dismiss the indictment, arguing that Count I of the indictment failed to explicitly allege the elements of robbery, particularly intent. The court denied this motion. Velleff was ultimately resentenced on September 27, 2007 to a total of 300 month's imprisonment, 240 months on the drug and robbery counts to run consecutive to 60 months on the § 924(c) count.

Proceeding *pro se*, Velleff again filed an appeal. With the aid of appointed counsel, he challenged not only his sentence but also the validity of his convictions. On September 16, 2008, the Seventh Circuit determined that Velleff had forfeited any arguments concerning the validity of his conviction as they had not been raised in his first appeal and affirmed Velleff's sentence. *United States* v. *Velleff*, 311 Fed. App'x 918 (7th Cir. 2008). Velleff petitioned the Supreme Court for a writ of certiorari, which was denied on January 26, 2009. He then timely filed this § 2255 petition on January 21, 2010.

## DISCUSSION

Relief under § 2255 "is reserved for extraordinary situations." *Hays* v. *United States*, 397 F.3d 564, 566 (7th Cir. 2005) (quoting *Prewitt* v. *United States*, 83 F.3d 812, 816 (7th Cir. 1996)). A district court must grant a § 2255 motion when the petitioner establishes "that the district court sentenced him in violation of the Constitution or laws of the United States or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." *Id*. at 566–67 (quoting *Prewitt*, 83 F.3d at 816). It is proper to deny a § 2255 motion without an evidentiary hearing if "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255.

In order to establish constitutionally ineffective assistance of counsel, the petitioner must show (1) "that counsel's representation fell below an objective standard of reasonableness" and (2) "that there is a reasonable probability that, but for counsel's unprofessional errors, the result

7

of the proceeding would have been different." *Strickland* v. *Washington*, 466 U.S. 668, 688, 694, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To satisfy the performance prong of the *Strickland* test, the petitioner must direct the court to specific acts or omissions of his counsel. *United States* v. *Trevino*, 60 F.3d 333, 338 (7th Cir. 1995). The court must then consider whether, in light of all the circumstances, counsel's performance was outside the range of professionally competent assistance. *Id.* The court strongly presumes that counsel's performance was effective, *id.*, and must not let hindsight interfere with its review of counsel's decisions. *Harris* v. *Reed*, 894 F.2d 871, 877 (7th Cir. 1990) (citing *Strickland*, 466 U.S. at 697). Under the prejudice prong, to establish the reasonable probability that the outcome would have been different, the petitioner must show "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. A court need not address both prongs of the *Strickland* test if one provides the answer; that is, if a court determines that the alleged deficiency did not prejudice the defendant, the court need not consider the first prong. *United States* v. *Fudge*, 325 F.3d 910, 924 (7th Cir. 2003).

**I.  Trial and Appellate Counsel's Failure to Raise an Issue Regarding Whether a Second Mandatory Minimum Sentence Is Appropriate Under § 924(c) (Ground I)**

Velleff first challenges counsel's failure to object to the imposition of two consecutive mandatory minimum sentences and to raise the issue on appeal. He claims that the "except" clause in § 924(c)(1)(A) does not allow for the imposition of both the 10-year mandatory minimum for his conviction on the drug counts and the 5-year mandatory minimum for his conviction on the § 924(c) count. While this argument was indeed popular with those convicted of similar crimes, at the time of Velleff's sentencing, three circuit courts had rejected it. *See United States* v. *Jolivette*, 257 F.3d 581, 587 (6th Cir. 2001); *United States* v. *Studifin*, 240 F.3d 415, 423 (4th Cir. 2001); *United States* v. *Alaniz*, 235 F.3d 386, 389 (8th Cir. 2000). The Second Circuit did agree with Velleff's argument in 2008. *See United States* v. *Whitley*, 529 F.3d 150, 158 (2d Cir. 2008). The Seventh Circuit, however, joined the majority of circuits in holding that

the mandatory minimum imposed by § 924(c) must run consecutive to a mandatory minimum penalty imposed for another offense of conviction. *United States* v. *Easter*, 553 F.3d 519, 525–27 (7th Cir. 2009). The Supreme Court recently unanimously rejected the position Velleff advocates. *Abbott* v. *United States*, --- U.S. ----, 131 S. Ct. 18, 178 L. Ed. 2d 348 (2010). Although these decisions postdate Velleff's initial sentencing and appeal, they establish that Velleff cannot demonstrate that he was prejudiced by counsel's failure to raise the issue. As the Seventh Circuit noted in *Easter*, although the proper construction of the "except" clause was a matter of first impression, it was an issue that was frivolous to raise because "of the clarity of statutory language, or even as a matter of common sense." *Easter*, 553 F.3d at 525 (quoting *United States* v. *Lopez-Flores*, 275 F.3d 661, 663 (7th Cir. 2001)); *see also James* v. *United States*, Nos. 08 C 1416, 02 CR 278, 2008 WL 2782826, at *8 (N.D. Ill. July 15, 2008) (finding that sentencing counsel's failure to argue that the imposition of a 60-month consecutive sentence is not allowed under the "except" clause did not amount to ineffective assistance where the argument would have been a frivolous one). Trial and appellate counsel can thus not be faulted for not raising this argument.

## II.   Trial and Appellate Counsel's Failure to Challenge the Existence of a Nexus to Interstate Commerce (Ground II)

Velleff next argues that his trial and appellate counsel failed to challenge the absence of an essential element of the robbery charges, namely that the robbery have an effect on interstate commerce. This ground initially fails as to trial counsel, for counsel raised the issue throughout trial and in Velleff's motion for judgment of acquittal. *See, e.g.*, Trial Tr. 468–74, July 9, 2003; Crim. R. 85.   Although the court denied the motion, trial counsel cannot be faulted as ineffective for trying.

While Velleff's initial appellate counsel did not raise the issue on appeal, her failure to do so does not amount to ineffective assistance. Appellate counsel's performance is deemed insufficient "when counsel omits a 'significant and obvious issue' without a legitimate strategic

9

reason for doing so." *Howard* v. *Gramley*, 225 F.3d 784, 790 (7th Cir. 2000). To prevail on the prejudice prong for ineffective assistance of appellate counsel claims, Velleff must show "that there is a reasonable probability that his case would have been remanded for a new trial or that the decision of the . . . trial court would have been otherwise modified on appeal." *Id.* "In other words, performance is about picking the battles; prejudice looks at whether winning the battle would have made a difference in the outcome of the war." *Id.* at 791. As trial counsel focused largely on the lack of a nexus to interstate commerce, it would seem that this would have been a logical issue for appeal. The fact that Velleff claims that appellate counsel did not adequately consult with him in filing the appeal, as evidenced in his various motions regarding the issue at the time, lends some credence to Velleff's claim of unreasonableness, particularly as appellate counsel did not represent him at trial. On the other hand, appellate counsel may have examined the court's rulings on the issue in addition to the case law and determined that it did not hold promise for appeal, particularly as the appellate court would have accorded great deference to the jury's verdict and overturned it only if the record contained no evidence from which the jury could have found the interstate commerce element beyond a reasonable doubt. *See United States* v. *Peterson*, 236 F.3d 848, 853 (7th Cir. 2001).

Velleff, however, cannot show that there is a reasonable probability that the Seventh Circuit would have modified this court's decision if the issue had been presented to it. To sustain a conviction under the Hobbs Act, the government must show "some actual, even if *de minimis*, effect, or, where there is no actual effect, a realistic probability of an effect, on interstate commerce."[3] *Peterson*, 236 F.3d at 851–52. The fact that it was impossible for there to actually be an effect on interstate commerce because the operation grew out of a sting in which no cocaine or money was actually present is irrelevant. *United States* v. *Bailey*, 227 F.3d

---

[3] In *Peterson*, the Seventh Circuit reaffirmed that only a *de minimis* effect was required to sustain a Hobbs Act conviction, even after the Supreme Court's decisions in *United States* v. *Lopez*, 514 U.S. 549, 115 S. Ct. 1624, 131 L. Ed. 2d 626 (1995), and *United States* v. *Morrison*, 529 U.S. 598, 120 S. Ct. 1740, 146 L. Ed. 2d 658 (2000). *Peterson*, 236 F.3d at 852.

792, 798–99 (7th Cir. 2000). Through its expert, the government offered evidence that cocaine is only available through interstate commerce, as it originates in South America and then travels across national and state lines before arriving in Illinois, and that robbing drug dealers of drug money depletes their assets. The Seventh Circuit has found such evidence sufficient to establish an effect on interstate commerce, even where the planned robbery is fictitious. *See Bailey*, 227 F.3d at 798; *United States* v. *Thomas*, 159 F.3d 296, 298 (7th Cir. 1998). Because there is no reasonable probability that the Seventh Circuit would not have followed its precedent and affirmed this court's decision if the issue had been presented to it on appeal, Velleff cannot establish that he was prejudiced by appellate counsel's failure to raise the issue.[4]

### III. Insufficient Evidence to Prove Velleff Took a Substantial Step Toward Committing the Robbery (Ground III)

Velleff also argues that the government failed to prove that he took a substantial step toward the commission of the robbery. This claim was not raised in his direct appeal. A defendant who fails to raise an issue on direct appeal "may not proffer it as a ground for collateral attack unless he demonstrates (1) good cause for failing to raise the error and (2) that the alleged error was actually prejudicial." *Wright* v. *United States*, 139 F.3d 551, 552 (7th Cir. 1998) (quoting *Waldemer* v. *United States*, 106 F.3d 729, 731 (7th Cir. 1996)); *see also Olmstead* v. *United States*, 55 F.3d 316, 319 (7th Cir. 1995) (a § 2255 motion "is neither a recapitulation of nor a substitute for a direct appeal" (quoting *Daniels* v. *United States*, 26 F.3d 706, 711 (7th Cir. 1994))). Ineffective assistance of appellate counsel may serve as cause for failure to raise a claim on direct appeal. *Stone* v. *Farley*, 86 F.3d 712, 716 (7th Cir. 1996). Regardless, Velleff cannot show prejudice, as Velleff's challenge to the sufficiency of the evidence would have clearly failed.

---

[4] To the extent Velleff is challenging the sufficiency of the evidence on the interstate commerce issue, this claim has been procedurally defaulted. Although it may be considered if Velleff establishes cause and prejudice from the failure to raise the issue on direct appeal, Velleff cannot surmount this bar to review as the court has concluded that his appellate counsel was not ineffective for not raising it on direct appeal. *Wright* v. *United States*, 139 F.3d 551, 552 (7th Cir. 1998).

In order to prevail on a sufficiency of the evidence challenge, Velleff would have to show that, after viewing the evidence in the light most favorable to the defendant, no reasonable jury could have found that he took a substantial step toward committing the planned robbery. *United States* v. *Warren*, 593 F.3d 540, 546 (7th Cir. 2010). The Seventh Circuit has described this as "a heavy, indeed, nearly insurmountable, burden." *Id.* In his § 2255 petition, Velleff claims that the evidence was insufficient to show a substantial step because he did not have a weapon with him and Shaffer testified that he was not sure whether Velleff and Deering intended to rob the stash house or him of the bait money. But Shaffer's statement does not negate other evidence in the record that Velleff and Deering intended to rob the stash house; neither does the fact that Deering, not Velleff, possessed a weapon. Evidence was introduced that Velleff stated on the day of the planned robbery that he did not bring a gun because he would grab the stash house enforcer's gun upon entering the house. Velleff actively participated in planning the robbery and, when given numerous opportunities to back out, indicated his commitment to proceeding. He never mentioned the other plan during the recorded post-arrest conversation he had with Deering. The fact that completion of the robbery was impossible is no defense. *United States* v. *Barnes*, 230 F.3d 311, 315 (7th Cir. 2000). By appearing with Deering outfitted with various tools for the robbery in the Menard's parking lot and following Shaffer in a separate car to the warehouse where they were to meet Jury and proceed to the stash house, Velleff's actions demonstrated that "events had moved beyond the preparation stage and would have resulted in the completed crime but for the government's intervention." *Id.* Because a reasonable jury could have found that Velleff took a substantial step, no prejudice can have resulted from counsel's failure to raise the issue on direct appeal. Furthermore, even if properly before the court, the sufficiency of the evidence challenge would fail.

### IV. Trial Counsel's Failure to Mention Shaffer's Testimony in the Motion for Judgment of Acquittal (Ground IV)

Velleff argues that trial counsel was ineffective because he failed to highlight Shaffer's testimony that he was not sure whether Velleff and Deering would double-cross him and steal the bait money from him. This claim is belied by the motion itself, which mentions the testimony on three different occasions. *See* Crim. R. 85-1 at 2, 14–15, 20. What more Velleff would have liked his trial counsel to do, or that trial counsel could have done, with respect to this issue is unclear.

### V. Trial and Appellate Counsel's Failure to Challenge the Jury Instructions on Count I (Grounds V and VI)

Velleff maintains that the jury instructions for Count I failed to include essential elements of the crime and that trial and appellate counsel were ineffective for failing to raise the issue.[5] He claims that the jury was not instructed to find that he knowingly or intentionally conspired to commit a robbery that would obstruct, delay, or affect interstate commerce. The court did, however, instruct the jury that in order to find Velleff guilty of Count I, it had to find that he "knowingly became a member of the conspiracy with an intention to further the conspiracy." Trial Tr. 543–44, July 10, 2003. The term "knowingly" was further defined for the jury in connection with Count I. *Id.* at 545–46. The court also instructed the jury that it had to find "that the conspiracy as charged in Count One existed." *Id.* at 543. The conspiracy was described in a separate instruction as one "to commit robbery affecting commerce, in violation of Title 18, United States Code, Section 1951." *Id.* Thus, the jury was clearly instructed that it had to find that Velleff knowingly became a member of a conspiracy to commit a robbery that would

---

[5] To the extent Velleff is also challenging the indictment's failure to include a mental state, as he did in his second appeal, the argument does not have merit. Although the Seventh Circuit found that the challenge was forfeited for failure to include the ground in Velleff's first appeal, it also remarked: "Not that any of the arguments now advanced has merit; Velleff should not think that he can do better by contending that his lawyer on the first appeal furnished ineffective assistance." *Velleff*, 311 Fed. App'x at 919.

13

affect interstate commerce. That the elements of robbery and an explanation of what constitutes an effect on interstate commerce were included in later parts of the jury instructions is immaterial; the fact that they were included demonstrates that the jury had the necessary instructions on all essential elements of both the conspiracy and attempt claims and understood what it had to find in order to convict Velleff. *See United States* v. *Perez*, 43 F.3d 1131, 1137 (7th Cir. 1994) ("This court reviews instructions in their entirety and considers 'whether the jury was misled in any way and whether it had understanding of the issues and [of] its duty to determine those issues.'" (quoting *United States* v. *Donovan*, 24 F.3d 908, 916–17 (7th Cir. 1994)). Because the jury instructions accurately stated the law, trial and appellate counsel cannot be said to have been ineffective for failing to challenge them.

## VI. Prosecutorial Misconduct

### A. Closing Argument (Grounds VII and IX)

Velleff raises both a challenge to the government's closing argument independently and under the guise of ineffective assistance for failure to raise the issue on appeal. In closing argument, Velleff's counsel emphasized his defense, namely that he and Deering conspired to rob the ATF agents, not the drug stash house. In support of this theory, counsel emphasized Deering's proffer statement in which Deering stated that they conspired to rob the ATF agents of their buy money. The government in rebuttal suggested that Deering had lied in making his proffer statement. Specifically, it said, "He lied. It's not unheard of. Absolutely not. . . . It's ridiculous. The agents didn't believe him. This is self-serving bologna, trying to get himself off the hook, out of a bad situation." Trial Tr. 528:17–23, July 10, 2003. After discussing Deering's reversal of stories in pleading guilty to the offense and admitting to the facts of the indictment, the government stated, "I would suggest to you, ladies and gentlemen of the jury, that Deering's so-called statement to the agents where he lied has about as [m]uch substance as a broth made from the shadow of a dead pigeon." *Id.* at 529:12–15. Velleff's counsel objected to this statement as inflammatory and improper, the objection was sustained, and the government

14

apologized for the statement and withdrew it. Velleff claims that the transcript of the government's rebuttal omits the government yelling "It's a lie, it's a lie, it's a lie" about Deering's proffer and implies that the government engaged in misconduct to remove this statement from the transcript. He contends that the statement was highly prejudicial because Deering's proffer statement was critical to his defense.[6]

As this is the first time Velleff raises the independent issue of prosecutorial misconduct, the court is again faced with a situation in which he may be procedurally barred from raising it unless he can show good cause for and prejudice from failing to raise the issue on direct review. *See Wright*, 139 F.3d at 552. The court need not determine this, as even if Velleff had properly raised the claim, it would fail.

In reviewing charges of prosecutorial misconduct, the court first looks to whether the challenged remarks were improper and then to whether they prejudiced the defendant. *United States* v. *Serfling*, 504 F.3d 672, 677 (7th Cir. 2007). The government apparently concedes that the stricken remark comparing Deering's proffer to a broth made from a dead pigeon was improperly inflammatory. In determining whether it was prejudicial, the court considers factors such as "(1) whether the prosecutor misstated the evidence; (2) whether the remark implicated a specific right; (3) whether the defendant invited the response; (4) the efficacy of curative instructions; (5) the defendant's opportunity to rebut; and (6) the weight of the evidence." *Id.* Here, defense counsel invited comment from the government regarding Deering's credibility in asking the jury to find that Deering's proffer statement constituted reasonable doubt about Velleff's intentions. In context, the government was comparing Deering's proffer statement, which was not made under oath and only admitted to impeach Deering's tape-recorded statements, and Deering's statements during his plea hearing, made under oath and admitted for

---

[6] Velleff vaguely alludes to a claim for ineffective assistance of trial counsel in changing the theory of defense from entrapment to contesting Velleff's intention to rob the drug stash house. The argument, however, is undeveloped and will not be considered by the court.

the truth of the matter asserted. "There is nothing improper about a prosecutor's comments concerning the credibility of a witness as long as the comments are tied to the evidence presented at trial or reasonable inferences from that evidence." *United States* v. *Robbins*, 197 F.3d 829, 843 (7th Cir. 1999). Although defense counsel did not have an opportunity to rebut the statement, the effect of the inflammatory remark was mitigated by the court's sustaining of defense counsel's objection to the remark and its instruction that the lawyers' statements were not evidence and that the jury should ignore any questions, testimony, or statements that were stricken from the record. *Id.* When considered in light of the evidence against Velleff, the court cannot conclude that the government's improper statement "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Darden* v. *Wainwright*, 477 U.S. 168, 181, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (internal quotation marks omitted).

Having concluded that the government's statement that Deering's proffer was a lie did not prejudice Velleff, the court declines to conduct an evidentiary hearing to determine whether the transcript omits a repetitive statement by the government that the proffer was a lie. The purpose such an inquiry would serve is unclear. Velleff has not presented an affidavit from anyone present at the trial that this statement was made. The recording no longer exists. *See* Crim. R. 101. Memories have likely faded as the trial took place over seven years ago. If anything, the government's alleged statement would be subjected to the same analysis above and found not to have prejudiced Velleff. Without more, the court declines to encourage Velleff's pursuit of such a fishing expedition.

    **B.    Interference with Velleff's Sixth Amendment Right to Counsel (Ground VIII)**

Velleff argues that the government interfered with his right to counsel when it informed his initial appointed lawyer that Velleff had made a threat against him during a phone call with

16

his then-girlfriend.[7]  Although Velleff claims that his recorded statement that he would kill counsel if he screwed up by not returning a call was not meant to be taken seriously, the government acted as it should have when it learned of the statement.  Had Velleff been serious about the perceived threat, the government's failure to share this information with defense counsel would have been unconscionable.  The court has found no case law that supports Velleff's theory that the government's actions violated his Sixth Amendment right to counsel.[8]

## VII. Trial and Appellate Counsel's Failure to Challenge the Use of a Special Verdict Form to Determine the Drug Quantity (Ground X)

In his final ground for relief, Velleff argues that counsel was ineffective for failing to challenge the jury being tasked with determining the drug quantity involved in Counts II and V despite the court's statement that a general verdict form would be used.  Velleff also challenges the sufficiency of the evidence, arguing that the drug quantity was never proven beyond a reasonable doubt.  Drug quantity is a sentencing factor that must be found by the jury to the extent it establishes the maximum possible sentence.  *United States* v. *Washington*, 558 F.3d 716, 719 (7th Cir. 2009).  Velleff has not explained why it was unreasonable for counsel not to challenge the inclusion of drug quantity in the verdict form or the prejudice that resulted, and the court will not construct the argument for him.  *See United States* v. *Hook*, 195 F.3d 299, 310 (7th Cir.1999) ("[I]t is not the obligation of this court to research and construct the legal arguments open to parties, especially when they are represented by counsel.").  He is procedurally barred from raising a sufficiency of the evidence challenge to the drug quantity, particularly as there

---

[7] Velleff is not claiming that the government should not have listened to the conversation but only that it should not have informed counsel of the statement.

[8] This situation is unlike that in *United States* v. *Amlani*, 111 F.3d 705 (9th Cir. 1997) cited by Velleff.  In *Amlani*, the government repeatedly disparaged Amlani's retained counsel to Amlani and his wife, causing him to retain different counsel.  The situation here is that in reverse, except there is no allegation that the government repeatedly disparaged Velleff to counsel but instead only made counsel aware of a threat it considered to be serious enough to relay.  The passing on of information related to counsel's safety cannot be considered interference with the attorney-client relationship.

17

was undisputed evidence introduced at trial that Velleff and Deering thought that there would be between six and eleven kilograms of cocaine at the stash house for them to rob.

Having found that none of Velleff's claims have merit, his § 2255 petition will be denied.

## VIII. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, the court must issue or deny a certificate of appealability when it enters a final order adverse to the petitioner. With respect to claims of constitutional violations denied on their merits, a habeas petitioner is entitled to a certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El* v. *Cockrell*, 537 U.S. 322, 327, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (citing 28 U.S.C. § 2253(c)(2)). To make a substantial showing the petitioner must show that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack* v. *McDaniel*, 529 U.S. 473, 484, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot* v. *Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983)). The requirement of a certificate of appealability is a threshold issue and a determination of whether one should issue neither requires nor permits full consideration of the factual and legal merits of the claims. "The question is the debatability of the underlying constitutional claim, not the resolution of that debate." *Miller-El*, 537 U.S. at 342. Velleff has not sufficiently established that his counsel fell below the standards of competent representation or that he was prejudiced by their failures to warrant further pursuit of theories that he firmly, albeit erroneously, believes have merit. The underlying challenges to his conviction have been raised in various other postures and rejected in each instance. The court can find no reason why reasonable jurists would debate or disagree with this court's ruling and so denies Velleff a certificate of appealability.

**CONCLUSION AND ORDER**

For the reasons stated above, Velleff's § 2255 petition and a certificate of appealability are denied. The case is terminated.


Dated: March 15, 2011                    ENTER: _____

                                         JOAN HUMPREY LEFKOW
                                         United States District Judge